BAKER BOTTS L.L.P.
Jeremy J. Taylor (SBN 249075)
jeremy.taylor@bakerbotts.com
Arya Moshiri (SBN 324231)
arya.moshiri@bakerbotts.com
101 California St., Ste. 3600
San Francisco, CA 94111
Telephone: 415.291.6200
Facsimile: 415.291.6300

Bethany R. Salpietra (*pro hac vice pending*)
bethany.salpietra@bakerbotts.com
2001 Ross Ave., Ste. 900
Dallas, TX 75201
Telephone: 214.953.6500
Facsimile: 214.953.6503

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LYFT, INC.<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>AGIS SOFTWARE DEVELOPMENT LLC, ADVANCED GROUND INFORMATION SYSTEMS, INC., AGIS HOLDINGS, INC., MALCOM K. BEYER, JR.<br><br>　　　　　Defendants. | Case No. 21-cv-4653<br><br>**FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT**<br><br>**REDACTED VERSION**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Lyft, Inc. ("Lyft") hereby pleads the following claims for Declaratory Judgment against Defendants AGIS Software Development LLC ("AGIS Software"), Advanced Ground Information Systems, Inc. ("AGIS, Inc."), AGIS Holdings, Inc. ("AGIS Holdings"), and Malcolm K. Beyer, Jr. ("Beyer") (collectively "AGIS") and alleges as follows:

## THE PARTIES

1.　　Lyft is a Delaware corporation with its principal place of business located at 185 Berry Street, Suite 5000, San Francisco, California 94107.

2.      On information and belief, AGIS Software is a Texas limited liability company, having its principal place of business at 100 W. Houston Street, Marshall, Texas 75670, and is a wholly owned subsidiary of AGIS Holdings.

3.      AGIS Software alleges that it is the owner of all right, title, and interest to United States Patent Nos. 7,031,728 ("'728 patent"), 7,630,724 ("'724 patent"), 8,213,970 ("'970 patent"), 10,299,100 ("'100 patent"), and 10,341,838 ("'838 patent") (collectively, "Patents-in-Suit").

4.      Lyft disputes whether AGIS Software holds proper title to at least the '724, '100, and '838 Patents due to named inventor Christopher Rice's employment with Microsoft Corporation at the time the '724, '100, and '838 Patents, or their parent applications, were filed.

5.      In June 2017, AGIS, Inc. assigned the Patents-in-Suit to AGIS Holdings, and on the same day, AGIS Holdings assigned the Patents-in-Suit to AGIS Software.

6.      On information and belief, AGIS Holdings is organized under the laws of the State of Florida and maintains its principal place of business at 92 Lighthouse Drive, Jupiter, FL 33469.

7.      AGIS Holdings is the sole member of AGIS Software.

8.      On information and belief, AGIS, Inc. is organized under the laws of the State of Florida and maintains its principal place of business at 92 Lighthouse Drive, Jupiter, FL 33469.

9.      AGIS, Inc. is a wholly owned subsidiary of AGIS Holdings.

10.     Malcolm K. Beyer, Jr. is the named inventor of the Patents-in-Suit

11.     Malcolm K. Beyer, Jr. is the CEO of AGIS Software, AGIS Holdings, and AGIS, Inc.

12.     Malcolm K. Beyer, Jr. resides at 92 Lighthouse Drive, Jupiter, FL 33469.

## JURISDICTION AND VENUE

13.     The Court has subject matter jurisdiction over Lyft's declaratory judgment claims relating to patent non-infringement under 28 U.S.C. §§ 2201, 2202, 1331, and 1338(a).

### A.  AGIS Software accused Lyft of infringing the Patents-in-Suit

14.     On January 29, 2021, AGIS Software sued Lyft for alleged past and current infringement of the Patents-in-Suit in the United States District Court of the Eastern District of Texas by manufacturing, using, distributing, selling, offering for sale, and/or exporting from and

importing into the United States the "the Lyft and Lyft Driver applications and the related services and/or servers for the applications." *See AGIS Software Development LLC v. Lyft, Inc.*, Civil Action No. 2:21-cv-00024-JRG (E.D. Tex.), Dkt. 1 at ¶ 23.

15.    On April 27, 2021 Lyft moved to dismiss the Eastern District of Texas litigation for improper venue. *See AGIS Software Development LLC v. T-Mobile USA, Inc. et al.*, Civil Action No. 2:21-cv-00072-JRG (E.D. Tex.), Dkt. 30.

16.    On November 10, 2021, Magistrate Judge Payne issued a Report and Recommendation that Lyft's motion to dismiss be granted. *See AGIS Software Development LLC v. T-Mobile USA, Inc. et al.*, Civil Action No. 2:21-cv-00072-JRG (E.D. Tex.), Dkt. 212.

17.    On January 19, 2022, the Court adopted the Magistrate's Report and Recommendation and directed the clerk of the Court to close the case. *See AGIS Software Development LLC v. T-Mobile USA, Inc. et al.*, Civil Action No. 2:21-cv-00072-JRG (E.D. Tex.), Dkt. 334.

**B.  Lyft seeks a declaratory judgment that it does not infringe the Patents-in-Suit**

18.    Lyft denies that the Patents-in-Suit have been or currently are infringed through the making, using, distributing, sale, offering for sale, exportation, or importation of the Lyft or Lyft Driver applications and any related services and/or servers for the applications.

19.    AGIS Software's infringement allegations and related actions threaten actual and imminent injury to Lyft that can be redressed by judicial relief and warrants the issue of a declaratory judgment, under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*

20.    An actual and justiciable controversy with respect to the Patents-in-Suit exists between Lyft and AGIS Software and between Lyft and AGIS, Inc., AGIS Holdings, and/or Malcolm K. Beyer, Jr. under an alter ego theory.

**C.  AGIS Software is subject to the specific jurisdiction of this Court**

21.    AGIS Software, AGIS, Inc., AGIS Holdings, and/or Malcom K. Beyer, Jr. are subject to this Court's specific jurisdiction, pursuant to due process and/or the California Long Arm Statute due to: (1) AGIS Software, AGIS, Inc., AGIS Holdings, and/or Malcom K. Beyer, Jr. purposefully directing activities at residents of this forum, and (2) the claims arising out of or relating to these

1    activities of AGIS Software, AGIS, Inc., AGIS Holdings, and/or Malcom K. Beyer, Jr.  Further, the

2    assertions of personal jurisdiction are reasonable and fair.

        i.  **AGIS Software purposefully directed its patent licensing activities to California**

           **companies subjecting it to specific jurisdiction under _Trimble_**

5    22.    AGIS Software is a patent licensing company that licenses its patent portfolio,

6    including the Patents-in-Suit.

7    23.    AGIS Software has no employees.

8    24.    AGIS Software develops software related to the Patents-in-Suit.

9    25.    Software developed by AGIS Software is both used inside and outside the United

10    States.

11    26.    On information and belief, software developed by AGIS Software related to the

12    Patents-in-Suit is used within California.  Lyft attempted to confirm this information from AGIS

13    Software via an interrogatory (i.e., Jurisdictional Interrogatory No. 1), but AGIS Software has

14    refused to provide it.  Lyft also sought to confirm this information at the deposition of AGIS

15    Software, however, its designated witness, Thomas Meriam, was unable to confirm it.

16    27.    AGIS Software's principal source of revenue is from patent licenses with California

17    companies and other companies operating in the State of California.

18    28.    AGIS Software or its predecessor-in-interest has taken purposeful steps to enforce

19    the Patents-in-Suit and/or obtain licenses to the Patents-in-Suit and/or related patents with

20    companies having principal places of business and operations in this judicial district, including Lyft,

21    Google LLC ("Google"), Apple Inc. ("Apple"), WhatsApp LLC ("WhatsApp"), Facebook, Inc.

22    ("Facebook"),  Uber Technologies, Inc. d/b/a UBER ("Uber"), Life360, Inc. ("Life360"), and with

23    companies or their affiliates having operations and offices in the State of California, including ZTE

24    (USA) Inc. ("ZTE"), Waze LLC ("Waze"), HTC Corporation ("HTC"), T-Mobile US, Inc. ("T-

25    Mobile"), Huawei Device USA Inc. ("Huawei"), LG Electronics, Inc. ("LG"), and Samsung

26    Electronics America, Inc ("Samsung").

27    29.    On information and belief, AGIS Software or its predecessor-in-interest has taken

28    purposeful steps to enforce the Patents-in-Suit and/or obtain licenses to the Patents-in-Suit and/or

related patents with Smith Micro Software ("Smith Micro"), a company having operations and offices in the State of California.  Lyft attempted to confirm this information from AGIS Software via an interrogatory (i.e., Jurisdictional Interrogatory No. 1), but AGIS Software has refused to provide it.  Lyft also sought to confirm this information at the deposition of AGIS Software, however, its designated witness, Thomas Meriam, was unable to confirm it.  On information and belief, this information could have also been confirmed had AGIS Software complied with its obligations under Patent L.R. 3-2 to produce "all agreements, including licenses, transferring an interest in any patent-in-suit."  But AGIS Software has not produced all such agreements despite a specific request by Lyft that AGIS Software do so.

30.    AGIS Software or its predecessor-in-interest alleged infringement of the Patents-in-Suit and/or related patents through communications directed at companies with principal places of business in this judicial district, including Google, Facebook, and Life360.

31.    AGIS Software or its predecessor-in-interest enforced the Patents-in-Suit and/or related patents against companies with principal places of business in this judicial district, including Lyft, Google, Apple, WhatsApp, Uber, Life360, and against companies or their affiliates having operations and offices in the State of California, including ZTE, Waze, HTC, T-Mobile, Huawei, LG, and Samsung.

32.    ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

33.    On information and belief, AGIS Software negotiated a license agreement involving the Patents-in-Suit and/or related patents through communications with Smith Micro, a company having operations and offices in the State of California.  Lyft attempted to confirm this information from AGIS Software via an interrogatory (i.e., Jurisdictional Interrogatory No. 1), but AGIS Software has refused to provide it.  Lyft also sought to confirm this information at the deposition of AGIS Software, however, its designated witness, Thomas Meriam, was unable to confirm it.  On

1   information and belief, this information could have also been confirmed had AGIS Software

2   complied with its obligations under Patent L.R. 3-2 to produce "all agreements, including licenses,

3   transferring an interest in any patent-in-suit."   But AGIS Software has not produced all such

4   agreements despite a specific request by Lyft that AGIS Software do so.

5          34.     On information and belief, AGIS Software or its predecessor-in-interest have

6   negotiated and communicated with Google, Waze, and Samsung in an attempt to enter into license

7   agreements for the Patents-in-Suit and/or related patents.  Lyft requested this information from

8   AGIS Software via an interrogatory (i.e., Jurisdictional Interrogatory No. 1), but AGIS Software

9   has refused to provide it.  Lyft also sought to confirm this information at the deposition of AGIS

10  Software, however, its designated witness, Thomas Meriam, was unable to confirm it.

11         35.     AGIS Software's communications, including through telephone, mail, and/or other

12  means, with companies having principal places of business, offices, and/or operations in the State

13  of California to enforce and to negotiate licenses the Patents-in-Suit and/or related patents creates

14  specific personal jurisdiction over AGIS Software.  *See Trimble Inc. v. PerDiemCo LLC*, 997 F.3d

15  1147, 1155 (Fed. Cir. 2021).

16         36.     AGIS Software's non-exclusive licenses to the Patents-in-Suit with companies

17  having principal places of business, offices, and operations in the State of California are sufficiently

18  related to this declaratory judgment action concerning the same patents to support a finding of

19  specific jurisdiction.  *Id.* at 1156.

20                 **a.  AGIS Entities' patent license with Apple and related negotiations**

21         37.     On June 21, 2017, AGIS Software sued Apple, a California corporation with its

22  principal place of business in this District in Cupertino, California, alleging infringement of the '970

23  Patent, one of the Patents-in-Suit, and other patents related to the Patents-In-Suit. *See AGIS Software*

24  *Development LLC v. Apple Inc.*, Civil Action No. 2:17-cv-00516 (E.D. Tex.), Dkt. 1 at ¶¶ 6-9, 18,

25  27, 41, 55.

26         38.     On information and belief, Apple currently has or previously had headquarters at 1

27  Apple Park Way Cupertino, California 95014.

28

39.     On information and belief, in or around March 2019, AGIS Software, AGIS, Inc., AGIS Holdings, and/or Malcom K. Beyer, Jr. (collectively, "AGIS Entities") entered into a license agreement with Apple ("Apple License") covering all patents and patent applications assigned to, owned by, or controlled by the AGIS Entities, including the Patents-in-Suit.  On information and belief, this information could have been confirmed had AGIS Software complied with its obligations under Patent L.R. 3-2 to produce "all agreements, including licenses, transferring an interest in any patent-in-suit."  But AGIS Software has not produced all such agreements despite a specific request by Lyft that AGIS Software do so.

40.     On information and belief, AGIS Software negotiated, including through numerous written email and/or other communications, with Apple to obtain the Apple License.  Lyft requested this information from AGIS Software via an interrogatory (i.e., Jurisdictional Interrogatory No. 1), but AGIS Software has refused to provide it.  Lyft also sought to confirm this information at the deposition of AGIS Software, however, its designated witness, Thomas Meriam, was unable to confirm it.

**b.  AGIS Software's patent license with Huawei and related negotiations**

41.     On June 21, 2017, AGIS Software sued Huawei Device USA Inc., Huawei Technologies USA Inc., and Huawei Technologies Co., Ltd. alleging infringement of patents, including the '970 Patent, one of the Patents-in-Suit. *AGIS Software Development LLC v. Huawei Device USA Inc.*, Civil Action No. 2:17-cv-00513 (E.D. Tex.), Dkt. 1 at ¶¶ 8-11, 20, 29, 42, 55.

42.     On August 17, 2017, AGIS Software filed an amended complaint, adding Huawei Device (Dongguan) Co., Ltd. as a defendant.

43.     On information and belief, Huawei currently has or previously had an affiliate office in California.

44.     On information and belief, in or around March 2019, AGIS Software entered into a license agreement with Huawei ("Huawei License") covering all patents and patent applications owned or controlled by AGIS Software or its affiliates.  On information and belief, this information could have been confirmed had AGIS Software complied with its obligations under Patent L.R. 3-2 to produce "all agreements, including licenses, transferring an interest in any patent-in-suit."  But

AGIS Software has not produced all such agreements despite a specific request by Lyft that AGIS Software do so.

45.     On information and belief, AGIS Software negotiated, including through numerous written email and/or other communications, with Huawei to obtain the Huawei License.  Lyft requested this information from AGIS Software via an interrogatory (i.e., Jurisdictional Interrogatory No. 1), but AGIS Software has refused to provide it.  Lyft also sought to confirm this information at the deposition of AGIS Software, however, its designated witness, Thomas Meriam, was unable to confirm it.

### c.  AGIS Software patent license with HTC and related negotiations

46.     On June 21, 2017, AGIS Software sued HTC Corporation alleging infringement of patents, including the '970 Patent, one of the Patents-in-Suit. *AGIS Software Development LLC v. HTC Corporation*, Civil Action No. 2:17-cv-00514 (E.D. Tex.), Dkt. 1 at ¶¶ 6-9, 18, 27, 40, 53.

47.     On information and belief, HTC currently has or previously had an affiliate office in California.

48.     On information and belief, in or around July of 2019, AGIS Software entered into a license agreement with HTC ("HTC License") covering all patents and patent applications owned or controlled by AGIS Software or its affiliates.  On information and belief, this information could have been confirmed had AGIS Software complied with its obligations under Patent L.R. 3-2 to produce "all agreements, including licenses, transferring an interest in any patent-in-suit."  But AGIS Software has not produced all such agreements despite a specific request by Lyft that AGIS Software do so.

49.     On information and belief, AGIS Software negotiated, including through numerous written email and/or other communications, with HTC to obtain the HTC License.  Lyft requested this information from AGIS Software via an interrogatory (i.e., Jurisdictional Interrogatory No. 1), but AGIS Software has refused to provide it.  Lyft also sought to confirm this information at the deposition of AGIS Software, however, its designated witness, Thomas Meriam, was unable to confirm it.

### d.  AGIS Software patent license with LG and related negotiations

1    50.    On June 21, 2017, AGIS Software sued LG Electronics, Inc. alleging infringement

2    of patents, including the '970 Patent, one of the Patents-in-Suit. *AGIS Software Development LLC*

3    *v. LG Electronics, Inc.*, Civil Action No. 2:17-cv-00515 (E.D. Tex.), Dkt. 1, ¶¶ 6-9, 18, 27, 40, 53.

4    51.    On information and belief, LG currently has or previously had an affiliate office in

5    California.

6    52.    On information and belief, in or around July 2019, AGIS Software entered into a

7    license agreement with LG ("LG License") covering all patents and patent applications owned or

8    controlled by AGIS Software or its affiliates.  On information and belief, this information could

9    have been confirmed had AGIS Software complied with its obligations under Patent L.R. 3-2 to

10   produce "all agreements, including licenses, transferring an interest in any patent-in-suit."  But

11   AGIS Software has not produced all such agreements despite a specific request by Lyft that AGIS

12   Software do so.

13   53.    On information and belief, AGIS Software negotiated, including through numerous

14   written email and/or other communications, with LG to obtain the LG License.  Lyft requested this

15   information from AGIS Software via an interrogatory (i.e., Jurisdictional Interrogatory No. 1), but

16   AGIS Software has refused to provide it.  Lyft also sought to confirm this information at the

17   deposition of AGIS Software, however, its designated witness, Thomas Meriam, was unable to

18   confirm it.

19   **e.  AGIS Software patent license with ZTE and related negotiations**

20   54.    On June 21, 2017, AGIS Software sued ZTE Corporation and ZTE (TX) Inc. alleging

21   infringement of patents, including the '970 Patent, one of the Patents-in-Suit.  *AGIS Software*

22   *Development LLC v. ZTE Corporation et al.*, Civil Action No. 2:17-cv-00517-JRG (E.D. Tex.), Dkt.

23   1 at ¶¶ 7-10, 19, 28, 41 54.

24   55.    On October 17, 2017, AGIS Software filed an amended complaint, adding ZTE

25   (USA) Inc. as a defendant to this litigation and alleging infringement of an additional related patent,

26   the '829 patent.  *AGIS Software Development LLC v. ZTE Corporation et al.*, Civil Action No. 2:17-

27   v-00517-JRG (E.D. Tex.), Dkt. 32 at ¶¶ 3 & 73.

28

56.     On information and belief, ZTE or a ZTE affiliate currently has or previously had an office located in California.

57.     On information and belief, in or around October 2019, AGIS Software entered into a license agreement with ZTE ("ZTE License") covering all patents and patent applications owned or controlled by AGIS Software or its affiliates.  On information and belief, this information could have been confirmed had AGIS Software complied with its obligations under Patent L.R. 3-2 to produce "all agreements, including licenses, transferring an interest in any patent-in-suit."  But AGIS Software has not produced all such agreements despite a specific request by Lyft that AGIS Software do so.

58.     On information and belief, AGIS Software negotiated, including through numerous written email and/or other communications, with ZTE to obtain the ZTE License.  Lyft requested this information from AGIS Software via an interrogatory (i.e., Jurisdictional Interrogatory No. 1), but AGIS Software has refused to provide it.  Lyft also sought to confirm this information at the deposition of AGIS Software, however, its designated witness, Thomas Meriam, was unable to confirm it.

### f.    AGIS Software patent license with WhatsApp and Facebook and related negotiations

59.     On January 29, 2021, AGIS Software sued WhatsApp, a corporation having its principal place of business in this District in Menlo Park, California, alleging infringement of the '728 Patent and '724 Patent, two of the Patent-in-Suit, and alleging infringement of other patents related to the Patents-In-Suit.  *See AGIS Software Development LLC v. WhatsApp, Inc.*, Civil Action No. 2:21-cv-00029 (E.D. Tex.), Dkt. 1 at ¶¶ 7-12, 21, 40, 59, 78, 97, 116.

60.     On information and belief, WhatsApp currently has or previously had an office in California.

61.     In or around September 2021, AGIS Software entered into a license agreement with WhatsApp and Facebook ("WhatsApp/Facebook License") covering all patents and patent applications held or controlled by AGIS Software, including the Patents-in-Suit.

---

62.    On information and belief, Facebook currently has or previously had an office in California.

63.    On information and belief, AGIS Software negotiated, including through numerous written email and/or other communications, with WhatsApp and/or Facebook to obtain the WhatsApp/Facebook License.  Lyft requested this information from AGIS Software via an interrogatory (i.e., Jurisdictional Interrogatory No. 1), but AGIS Software has refused to provide it. Lyft also sought to confirm this information at the deposition of AGIS Software, however, its designated witness, Thomas Meriam, was unable to confirm it.

**g.   AGIS Software patent license with Uber and related negotiations**

64.    On January 29, 2021, AGIS Software sued Uber alleging infringement of all five of the Patents-in-Suit. *AGIS Software Development LLC v. Uber Technologies Inc., d/b/a Uber*, Civil Action No. 2:21-cv-00026 (E.D. Tex.), Dkt. 1 at ¶¶ 18-22, 30, 46, 62, 77, 95.

65.    On information and belief, Uber currently has or previously had an office in California.

66.    On information and belief, in or around March of 2022, AGIS Software entered into a license agreement with Uber ("Uber License") covering all patents and patent applications held or controlled by AGIS Software, including the Patents-in-Suit.  On information and belief, this information could have been confirmed had AGIS Software complied with its obligations under Patent L.R. 3-2 to produce "all agreements, including licenses, transferring an interest in any patent-in-suit."  But AGIS Software has not produced all such agreements despite a specific request by Lyft that AGIS Software do so.

67.    On information and belief, AGIS Software negotiated, including through numerous written email and/or other communications, with Uber to obtain the Uber License.  Lyft requested this information from AGIS Software via an interrogatory (i.e., Jurisdictional Interrogatory No. 1), but AGIS Software has refused to provide it.  Lyft also sought to confirm this information at the deposition of AGIS Software, however, its designated witness, Thomas Meriam, was unable to confirm it.

**h.   AGIS Software patent license with T-Mobile and related negotiations**

68.     On March 3, 2021, AGIS Software sued T-Mobile alleging infringement of patents including the '728 Patent and the '724 Patent, two of the Patents-in-Suit. *AGIS Software Development LLC v. T-Mobile USA, Inc.*, Civil Action No. 2:21-cv-00072 (E.D. Tex.), Dkt. 1 at ¶¶ 7-12, 24, 46, 67, 98, 120, 147.

69.     On information and belief, T-Mobile or a T-Mobile affiliate currently has or previously had an office in California.

70.     On information and belief, in or around November of 2021, AGIS Software entered into a license agreement with T-Mobile ("T-Mobile License") covering all patents and patent applications owned or controlled by AGIS Software or its affiliates.  On information and belief, this information could have been confirmed had AGIS Software complied with its obligations under Patent L.R. 3-2 to produce "all agreements, including licenses, transferring an interest in any patent-in-suit."  But AGIS Software has not produced all such agreements despite a specific request by Lyft that AGIS Software do so.

71.     On information and belief, AGIS Software negotiated, including through numerous written email and/or other communications, with T-Mobile to obtain the -Mobile License.  Lyft requested this information from AGIS Software via an interrogatory (i.e., Jurisdictional Interrogatory No. 1), but AGIS Software has refused to provide it.  Lyft also sought to confirm this information at the deposition of AGIS Software, however, its designated witness, Thomas Meriam, was unable to confirm it.

### i.  AGIS Software patent license with Smith Micro and related negotiations

72.     On May 17, 2021, Smith Micro sued AGIS Software for a declaratory judgment that Smith Micro did not infringe certain of AGIS Software's patents, including the '728 and '724 Patents, and that said patents were further invalid. *Smith Micro Software, Inc. v. AGIS Software Development LLC*, Civil Action No. 5:21-cv-03677 (N.D.Cal.), Dkt. 1 at ¶¶ 16, 50, 55, 60, 65, 70, 75, 81, 88, 96, 103, 110, 117.

73.     On information and belief, Smith Micro currently has or previously had an office located in California.

74.    On information and belief, in or around October 2021, AGIS Software entered into a license agreement with Smith Micro ("Smith Micro License") covering all patents and patent applications owned or controlled by AGIS Software or its affiliates.  On information and belief, this information could have been confirmed had AGIS Software complied with its obligations under Patent L.R. 3-2 to produce "all agreements, including licenses, transferring an interest in any patent-in-suit."  But AGIS Software has not produced all such agreements despite a specific request by Lyft that AGIS Software do so.

75.    On information and belief, AGIS Software negotiated, including through numerous written email and/or other communications, with Smith Micro to obtain the Smith Micro License. Lyft requested this information from AGIS Software via an interrogatory (i.e., Jurisdictional Interrogatory No. 1), but AGIS Software has refused to provide it.  Lyft also sought to confirm this information at the deposition of AGIS Software, however, its designated witness, Thomas Meriam, was unable to confirm it.

### j.    AGIS, Inc.'s negotiations with Life360

76.    On information and belief, AGIS, Inc. sent a letter to Life360, a company headquartered in San Francisco, California, on May 13, 2014 alleging infringement of AGIS's patents, expressing a willingness to engage in discussions regarding "royalty bearing licensing terms," and stating that "Life360 and its customers must cease and desist from further infringement" in the absence of a license.  *See Advanced Ground Information Sys., Inc. v. Life360, Inc.*, Civil Action No. 9:14-cv-80651 (S.D. Fla.), Dkt. 181 (Transcript of Jury Trial Proceedings Day 1 held on Mar. 9, 2015) at 87:2-7.

77.    Three days later, on May 16, 2014, AGIS, Inc. sued Life360 alleging infringement of the '728 Patent, one of the Patents-in-Suit, and related patents.  *Advanced Ground Information Sys., Inc. v. Life360, Inc.*, Civil Action No. 9:14-cv-80651 (S.D. Fla.), Dkt. 1 at ¶¶ 2, 16, 25, 34, 43.

78.    On information and belief, Life360 currently has or previously had an office located in California.

79.    On information and belief, AGIS, Inc. negotiated, including through numerous written email and/or other communications, with Life360 to attempt to license AGIS's patents.  Lyft

requested this information from AGIS, Inc. via a subpoena issued by Lyft on February 4, 2022, in addition to requesting such information via an interrogatory (i.e., Jurisdictional Interrogatory No. 1). Both AGIS, Inc. and AGIS Software have refused to provide the requested information. Lyft also sought to confirm this information at the deposition of AGIS Software, however, its designated witness, Thomas Meriam, was unable to confirm it.

ii.    **AGIS Software is a sham entity created to avoid jurisdiction and the corporate structure should be ignored under *Dainippon***

80.    On June 1, 2017, twenty days before filing a patent infringement lawsuit against Apple and ZTE, AGIS Software was created as a Texas LLC to hold and manage intellectual property asserts previously owned by AGIS, Inc.

81.    On June 15, 2017, AGIS, Inc. assigned the Patents-in-Suit to AGIS Holdings.

82.    On the same day, AGIS Holdings assigned the Patents-in-Suit to AGIS Software.

83.    ████████████████████████████████████████████████████████

84.    ████████████████████████████████████████████████████████

85.    Both AGIS, Inc. and AGIS Software are ██████████ subsidiaries of AGIS Holdings.

86.    Malcom K. Beyer, Jr., the named inventor of the Patents-in-Suit, is the CEO of AGIS Software, AGIS Holdings, and AGIS, Inc.

87.    On information and belief, AGIS Software shares business addresses with AGIS Holdings and AGIS, Inc. at 92 Lighthouse Drive, Jupiter, FL 33469. Lyft requested this information from AGIS, Inc. and AGIS Holdings via a subpoena issued by Lyft on February 4, 2022, in addition to requesting such information via an interrogatory (i.e., Jurisdictional Interrogatory No. 1). AGIS, Inc., AGIS Holdings and AGIS Software have refused to provide the requested information. Lyft also sought to confirm this information at the deposition of AGIS Software, however, its designated witness, Thomas Meriam, was unable to confirm it.

88.    AGIS Software does not have any employees.

89.     AGIS Software's principal source of revenue is from patent licenses.

90.     AGIS, Inc. has regular contacts with California as discussed in Paragraphs 125-152.

91.     As a result of its 2017 reorganization, AGIS Software argues that it is insulated from defending declaratory judgment actions in the State of California despite AGIS, Inc.'s contacts with California.

92.     The creation of AGIS Software to insulate AGIS, Inc. from declaratory jurisdiction is an improper use of the corporate structure and should be disregarded for the jurisdictional analysis. *See Dainippon Screen Mfg. Co., Ltd. v. CFMT, Inc.*, 142 F.3d 1266, 1271 (Fed. Cir. 1998); *Google Inc. v. Rockstar Consortium U.S. LP*, No. C 13-5933-CW, 2014 WL 1571807, at *4 (N.D. Cal. 2014).

### iii.  AGIS Software, AGIS, Inc., AGIS Holdings, and/or Malcom K. Beyer, Jr. are alter egos of each other

93.     AGIS Software, AGIS, Inc., AGIS Holdings, and/or Malcom K. Beyer, Jr. are alter egos of each other, and contacts with the State of California by any of the AGIS entities should be considered in the personal jurisdiction analysis.

94.     AGIS Software self-describes as an "inanimate entity."

95.     AGIS Software is inadequately capitalized.

96.     AGIS Software's principal source of revenue is from patent licenses.

97.     AGIS Software, AGIS Holdings, and AGIS, Inc. commingle funds and other assets.

98.     On information and belief, AGIS, Inc. and AGIS Holdings transfer funds between their bank accounts to pay expenses when one does not have an adequate revenue source for a particular time period.  Lyft requested this information from AGIS, Inc. and AGIS Holdings via subpoenas issued by Lyft on February 4, 2022, but both AGIS, Inc. and AGIS Holdings have refused to provide this information.

99.     ████████████████████████████████████████████████████
████████████████

100.    ████████████████████████████████████████████████████
████████████████████

101.    On information and belief, proceeds from lawsuits filed by AGIS Software involving the Patents-in-Suit were paid to AGIS, Inc. or AGIS Holdings rather than AGIS Software.   Lyft requested this information from AGIS, Inc. and AGIS Holdings via subpoenas issued by Lyft on February 4, 2022, but both AGIS, Inc. and AGIS Holdings have refused to provide this information. Lyft also sought to confirm this information at the deposition of AGIS Software, however, its designated witness, Thomas Meriam, was unable to confirm it.

102.    AGIS Software and AGIS, Inc. each claim the LifeRing products to be their product, and each represent that the LifeRing products practice at least one claim of the Patents-In-Suit.

103.    AGIS Software, AGIS Holdings, and AGIS, Inc. disregard corporate formalities and fail to maintain an arm's length relationship.

104.    On information and belief, AGIS, Inc. transferred patents and patent applications, including the Patents-in-Suit, to AGIS Holdings without consideration. Lyft requested this information from AGIS, Inc. and AGIS Holdings via subpoenas issued by Lyft on February 4, 2022, but both AGIS, Inc. and AGIS Holdings have refused to provide this information.

105.    ███████████████████████████████████████████████████
████████████████████████████████

106.    On information and belief, electronic inquiries submitted to AGIS Software's website are transmitted to AGIS, Inc.  Lyft sought to confirm this information at the deposition of AGIS Software, however, its designated witness, Thomas Meriam, was unable to confirm it.

107.    ███████████████████████████████████████████████████

108.    █████████████████████████████████

109.    ████████████████████████████████

110.    ███████████████████████████████████████████████████
████████████████████████████████

111.    █████████████████████████████████████████

112.    ███████████████████████████████████████████████████
█████████████████████

113.    On information and belief, AGIS, Inc. pays for office expenses at the business location in Jupiter, Florida.  Lyft requested this information from AGIS, Inc. via a subpoena issued by Lyft on February 4, 2022, but AGIS, Inc. has refused to provide this information.

114.    AGIS Software and AGIS, Inc. share a business location in Marshall, Texas.

115.    AGIS Software, AGIS Holdings, and AGIS, Inc. use the same employees.

116.    AGIS Software has no employees of its own, and employees of AGIS, Inc. perform work for AGIS Software.

117.    On information and belief, AGIS Holdings has no employees of its own, and employees of AGIS, Inc. perform work on behalf of AGIS Holdings.  Lyft requested this information from AGIS, Inc. and AGIS Holdings via subpoenas issued by Lyft on February 4, 2022, but both AGIS, Inc. and AGIS Holdings have refused to provide this information.

118.    AGIS Software does not hold regular officer, board, or other company meetings, and does not record and maintain regular minutes from officer, board, or other company meetings.

119.    On information and belief, AGIS, Inc. does not hold regular officer, board, or other corporate meetings and does not record and maintain regular minutes from officer, board, or other corporate meetings.  Lyft requested this information from AGIS, Inc. via a subpoena issued by Lyft on February 4, 2022, but AGIS, Inc. has refused to provide this information.

120.    AGIS Software, AGIS Holdings, and AGIS, Inc. have identical directors and/or officers.

121.    AGIS, Inc., AGIS Software, and AGIS Holdings have overlapping officers. Malcolm K. Beyer Jr. is the CEO of AGIS Software, the CEO/Director/Chairman of AGIS Holdings, and the CEO/Director/Chairman of AGIS, Inc. Margaret Beyer is the Secretary of AGIS Software, the Secretary/Director of AGIS Holdings, and the Secretary/Director of AGIS, Inc. Ronald Wisneski is the CFO/Treasurer of AGIS Software, the CFO/Treasurer of AGIS Holdings, and the CFO/Treasurer of AGIS, Inc. Sandel Blackwell is the President of AGIS Software, the President/Director of AGIS Holdings, and the President of AGIS, Inc.

122.    Because there is a unity of interest and ownership between AGIS Software, AGIS, Inc., AGIS Holdings, and/or Malcom K. Beyer, Jr. the separate personalities of the entities no longer

1    exist, and the corporate structure should be disregarded. *See, e.g. City & Cty. of San Francisco v.*

2    *Purdue Pharma L.P.*, 491 F. Supp. 3d 610, 635 (N.D. Cal. 2020).

3          123.    Failure to disregard the separate identities of AGIS Software, AGIS, Inc., AGIS

4    Holdings, and/or Malcom K. Beyer, Jr. would result in fraud or injustice to Lyft's ability to seek a

5    declaratory judgment of no infringement and recover any damages resulting from this lawsuit. *See,*

6    *e.g., Reynolds v. Binance Holdings Ltd.*, 481 F. Supp. 3d 997, 1009 (N.D. Cal. 2020) ("To establish

7    inequity in the absence of alter ego liability, a plaintiff must plead facts sufficient to demonstrate

8    that conduct amounting to bad faith makes it inequitable for the corporate owner to hide behind the

9    corporate form."); *Successor Agency to Former Emeryville Redevelopment Agency v. Swagelok Co.*,

10    364 F. Supp. 3d 1061, 1072 (N.D. Cal. 2019).

11          124.    Because Malcom K. Beyer, Jr. and/or AGIS, Inc. controls the actions of the AGIS

12    Software and AGIS Holdings such that AGIS Software and AGIS Holdings are mere alter egos of

13    Malcom K. Beyer, Jr. and/or AGIS, Inc., the Court may exercise jurisdiction collectively over the

14    AGIS entities.

15               **iv.**      **AGIS, Inc. has regular contacts with California involving the Patents-in-**

16                    **Suit**

17          125.    AGIS, Inc. has intentionally directed activities and communications to the State of

18    California.

19          126.    On information and belief, AGIS, Inc. maintains or maintained a bank account in

20    California. Lyft requested this information from AGIS, Inc. via a subpoena issued by Lyft on

21    February 4, 2022, in addition to requesting such information via an interrogatory (i.e., Jurisdictional

22    Interrogatory No. 1). Both AGIS, Inc. and AGIS Software have refused to provide the requested

23    information. Lyft also sought to confirm this information at the deposition of AGIS Software,

24    however, its designated witness, Thomas Meriam, was unable to confirm it.

25          127.    AGIS, Inc. communicated with California companies, including Google, Inc. and

26    Facebook, Inc., to pursue joint ventures, acquisition, or patent licensing agreements involving the

27    Patents-in-Suit and/or related patents.

28

128.    On information and belief, AGIS, Inc. formed partnerships with one or more California companies or individuals involving products that embody the Patents-in-Suit, including the LifeRing products.  Lyft requested this information from AGIS, Inc. via a subpoena issued by Lyft on February 4, 2022, in addition to requesting such information via an interrogatory (i.e., Jurisdictional Interrogatory No. 1).  Both AGIS, Inc. and AGIS Software have refused to provide the requested information.  Lyft also sought to confirm this information at the deposition of AGIS Software, however, its designated witness, Thomas Meriam, was unable to confirm it.

129.    On information and belief, AGIS, Inc. entered into non-disclosure agreements with California companies and organizations to pursue business opportunities involving products and/or services that embody the Patents-in-Suit, including the LifeRing products.  Lyft requested this information from AGIS, Inc. via a subpoena issued by Lyft on February 4, 2022, in addition to requesting such information via an interrogatory (i.e., Jurisdictional Interrogatory No. 1).  Both AGIS, Inc. and AGIS Software have refused to provide the requested information.  Lyft also sought to confirm this information at the deposition of AGIS Software, however, its designated witness, Thomas Meriam, was unable to confirm it.

130.    AGIS, Inc. sent a letter to California-based company Life360 alleging infringement of and seeking a license to one or more of the Patents-in-Suit and/or related patents.

131.    On information and belief, AGIS, Inc. marketed and continued to market its LifeRing product, which allegedly embodies the Patents-in-Suit, in California.  Lyft requested this information from AGIS, Inc. via a subpoena issued by Lyft on February 4, 2022, in addition to requesting such information via an interrogatory (i.e., Jurisdictional Interrogatory No. 1).  Both AGIS, Inc. and AGIS Software have refused to provide the requested information.  Lyft also sought to confirm this information at the deposition of AGIS Software, however, its designated witness, Thomas Meriam, was unable to confirm it.

132.    On information and belief, AGIS, Inc. marketed LifeRing, which allegedly embodies the Patents-in-Suit, to California companies CornerTurn LLC, Integrity Applications and American Reliance, Inc.  *See Life360, Inc. v. Advanced Ground Info. Sys., Inc.*, 2015 WL 5612008, at *3, Case No. 15-cv-00151-BLF (N.D. Cal. Sept. 21, 2015).  Lyft requested this information from AGIS, Inc.

via a subpoena issued by Lyft on February 4, 2022, in addition to requesting such information via an interrogatory (i.e., Jurisdictional Interrogatory No. 1). Both AGIS, Inc. and AGIS Software have refused to provide the requested information. On information and belief, AGIS, Inc. has also marketed LifeRing, which allegedly embodies the Patents-in-Suit to first responders, military agencies, and/or military contractors, including those in the State of California. Lyft requested this information from AGIS, Inc. via a subpoena issued by Lyft on February 4, 2022, in addition to requesting such information via an interrogatory (i.e., Jurisdictional Interrogatory No. 1). Both AGIS, Inc. and AGIS Software have refused to provide the requested information. Lyft also sought to confirm this information at the deposition of AGIS Software, however, its designated witness, Thomas Meriam, was unable to confirm it.

133. On information and belief, AGIS, Inc. provides or has provided downloads and updates of its LifeRing product, which allegedly embodies the Patents-in-Suit, in California. Lyft requested this information from AGIS, Inc. via a subpoena issued by Lyft on February 4, 2022, in addition to requesting such information via an interrogatory (i.e., Jurisdictional Interrogatory No. 1). Both AGIS, Inc. and AGIS Software have refused to provide the requested information. Lyft also sought to confirm this information at the deposition of AGIS Software, however, its designated witness, Thomas Meriam, was unable to confirm it.

134. On information and belief, AGIS, Inc. provided downloads of its LifeRing product, which allegedly embodies the Patents-in-Suit, to United States Navy personnel and contractors at the United States Navy, SPAWAR Systems Center Pacific, in San Diego, California. *See Life360, Inc.*, 2015 WL 5612008, at *3. Lyft requested this information from AGIS, Inc. via a subpoena issued by Lyft on February 4, 2022, in addition to requesting such information via an interrogatory (i.e., Jurisdictional Interrogatory No. 1). Both AGIS, Inc. and AGIS Software have refused to provide the requested information.

135. AGIS, Inc. allows companies and individuals, including California companies and individuals, a trial of the LifeRing product, which allegedly embodies the Patents-in-Suit.

136. On information and belief, AGIS Software has licensed the Patents-in-Suit and/or related patents to end users residing in California who downloaded the LifeRing product, which

allegedly embodies the Patents-in-Suit.  Lyft requested this information from AGIS, Inc. via a subpoena issued by Lyft on February 4, 2022, in addition to requesting such information via an interrogatory (i.e., Jurisdictional Interrogatory No. 1).  Both AGIS, Inc. and AGIS Software have refused to provide the requested information.  Lyft also sought to confirm this information at the deposition of AGIS Software, however, its designated witness, Thomas Meriam, was unable to confirm it.

137.    On information and belief, AGIS, Inc. demonstrates or has demonstrated its LifeRing product, which allegedly embodies the Patents-in-Suit, in California or to individuals or entities residing in or operating out of California, respectively.  Lyft requested this information from AGIS, Inc. via a subpoena issued by Lyft on February 4, 2022, in addition to requesting such information via an interrogatory (i.e., Jurisdictional Interrogatory No. 1).  Both AGIS, Inc. and AGIS Software have refused to provide the requested information.  Lyft also sought to confirm this information at the deposition of AGIS Software, however, its designated witness, Thomas Meriam, was unable to confirm it.

138.    On information and belief, AGIS, Inc. demonstrated its LifeRing product, which allegedly embodies the Patents-in-Suit, at a U.S. military exercise in San Diego, California.  *See Life360, Inc.*, 2015 WL 5612008, at *3.  Lyft requested this information from AGIS, Inc. via a subpoena issued by Lyft on February 4, 2022, in addition to requesting such information via an interrogatory (i.e., Jurisdictional Interrogatory No. 1).  Both AGIS, Inc. and AGIS Software have refused to provide the requested information.

139.    On information and belief, Malcolm K. Beyer, Jr. discussed the LifeRing Product, which allegedly embodies the Patents-in-Suit, with California companies including ADI Technology and Maven Consulting.  *See Life360, Inc.*, 2015 WL 5612008, at *3.  Lyft requested this information from AGIS, Inc. via a subpoena issued by Lyft on February 4, 2022, in addition to requesting such information via an interrogatory (i.e., Jurisdictional Interrogatory No. 1).  Both AGIS, Inc. and AGIS Software have refused to provide the requested information.

140.    On information and belief, AGIS, Inc. demonstrated its LifeRing product, which allegedly embodies the Patents-in-Suit, at the National Incident Management System (NIMS) Test,

to individuals or entities residing in or operating out of California, respectively, and/or which occurred in California.  Lyft requested this information from AGIS, Inc. via a subpoena issued by Lyft on February 4, 2022, in addition to requesting such information via an interrogatory (i.e., Jurisdictional Interrogatory No. 1).  Both AGIS, Inc. and AGIS Software have refused to provide the requested information.  Lyft also sought to confirm this information at the deposition of AGIS Software, however, its designated witness, Thomas Meriam, was unable to confirm it.

141.    On information and belief, AGIS, Inc. demonstrated its LifeRing product, which allegedly embodies the Patents-in-Suit, at a Coalition Warrior Interoperability Demonstration, to individuals or entities residing in or operating out of California, respectively, and/or which occurred in California.  Lyft requested this information from AGIS, Inc. via a subpoena issued by Lyft on February 4, 2022, in addition to requesting such information via an interrogatory (i.e., Jurisdictional Interrogatory No. 1).  Both AGIS, Inc. and AGIS Software have refused to provide the requested information.  Lyft also sought to confirm this information at the deposition of AGIS Software, however, its designated witness, Thomas Meriam, was unable to confirm it.

142.    On information and belief, AGIS, Inc. demonstrated its LifeRing product, which allegedly embodies the Patents-in-Suit, at Army Network Integration Evaluation, to individuals or entities residing in or operating out of California, respectively, and/or which occurred in California.  Lyft requested this information from AGIS, Inc. via a subpoena issued by Lyft on February 4, 2022, in addition to requesting such information via an interrogatory (i.e., Jurisdictional Interrogatory No. 1).  Both AGIS, Inc. and AGIS Software have refused to provide the requested information.  Lyft also sought to confirm this information at the deposition of AGIS Software, however, its designated witness, Thomas Meriam, was unable to confirm it.

143.    On information and belief, AGIS, Inc. demonstrated its LifeRing product, which allegedly embodies the Patents-in-Suit, at various U.S. Joint Commission Chief of Staff exercises, to individuals or entities residing in or operating out of California, respectively, and/or which occurred in California.  Lyft requested this information from AGIS, Inc. via a subpoena issued by Lyft on February 4, 2022, in addition to requesting such information via an interrogatory (i.e., Jurisdictional Interrogatory No. 1).  Both AGIS, Inc. and AGIS Software have refused to provide

the requested information.  Lyft also sought to confirm this information at the deposition of AGIS Software, however, its designated witness, Thomas Meriam, was unable to confirm it.

144.    On information and belief, AGIS, Inc. demonstrated its LifeRing product, which allegedly embodies the Patents-in-Suit, at the Defense Intelligence Agency's Plugfest, to individuals or entities residing in or operating out of California, respectively, and/or which occurred in California.  Lyft requested this information from AGIS, Inc. via a subpoena issued by Lyft on February 4, 2022, in addition to requesting such information via an interrogatory (i.e., Jurisdictional Interrogatory No. 1).  Both AGIS, Inc. and AGIS Software have refused to provide the requested information.  Lyft also sought to confirm this information at the deposition of AGIS Software, however, its designated witness, Thomas Meriam, was unable to confirm it.

145.    On information and belief, AGIS, Inc. demonstrated its LifeRing product, which allegedly embodies the Patents-in-Suit, at various SOCOM TNT exercises, to individuals or entities residing in or operating out of California, respectively, and/or which occurred in California.  Lyft requested this information from AGIS, Inc. via a subpoena issued by Lyft on February 4, 2022, in addition to requesting such information via an interrogatory (i.e., Jurisdictional Interrogatory No. 1).  Both AGIS, Inc. and AGIS Software have refused to provide the requested information.  Lyft also sought to confirm this information at the deposition of AGIS Software, however, its designated witness, Thomas Meriam, was unable to confirm it.

146.    On information and belief, AGIS, Inc. demonstrated its LifeRing product, which allegedly embodies the Patents-in-Suit, at U.S. NATO Bold Quest, to individuals or entities residing in or operating out of California, respectively, and/or which occurred in California.  Lyft requested this information from AGIS, Inc. via a subpoena issued by Lyft on February 4, 2022, in addition to requesting such information via an interrogatory (i.e., Jurisdictional Interrogatory No. 1).  Both AGIS, Inc. and AGIS Software have refused to provide the requested information.  Lyft also sought to confirm this information at the deposition of AGIS Software, however, its designated witness, Thomas Meriam, was unable to confirm it.

147.    On information and belief, AGIS, Inc. demonstrated its LifeRing product, which allegedly embodies the Patents-in-Suit, at Joint-Interagency Field Experimentation (JIFX)

exercises, to individuals or entities residing in or operating out of California, respectively, and/or which occurred in California. Lyft requested this information from AGIS, Inc. via a subpoena issued by Lyft on February 4, 2022, in addition to requesting such information via an interrogatory (i.e., Jurisdictional Interrogatory No. 1). Both AGIS, Inc. and AGIS Software have refused to provide the requested information. Lyft also sought to confirm this information at the deposition of AGIS Software, however, its designated witness, Thomas Meriam, was unable to confirm it.

148. On information and belief, AGIS, Inc. demonstrated its LifeRing product, which allegedly embodies the Patents-in-Suit, at the Army Expeditionary Warrior Experiment, to individuals or entities residing in or operating out of California, respectively, and/or which occurred in California. Lyft requested this information from AGIS, Inc. via a subpoena issued by Lyft on February 4, 2022, in addition to requesting such information via an interrogatory (i.e., Jurisdictional Interrogatory No. 1). Both AGIS, Inc. and AGIS Software have refused to provide the requested information. Lyft also sought to confirm this information at the deposition of AGIS Software, however, its designated witness, Thomas Meriam, was unable to confirm it.

149. On information and belief, AGIS, Inc. demonstrated its LifeRing product, which allegedly embodies the Patents-in-Suit, at Jolted Tactics, to individuals or entities residing in or operating out of California, respectively, and/or which occurred in California. Lyft requested this information from AGIS, Inc. via a subpoena issued by Lyft on February 4, 2022, in addition to requesting such information via an interrogatory (i.e., Jurisdictional Interrogatory No. 1). Both AGIS, Inc. and AGIS Software have refused to provide the requested information. Lyft also sought to confirm this information at the deposition of AGIS Software, however, its designated witness, Thomas Meriam, was unable to confirm it.

150. On information and belief, AGIS, Inc. demonstrated its LifeRing product, which allegedly embodies the Patents-in-Suit, to various individuals affiliated with the U.S. Navy that reside in California and/or which occurred in California. Lyft requested this information from AGIS, Inc. via a subpoena issued by Lyft on February 4, 2022, in addition to requesting such information via an interrogatory (i.e., Jurisdictional Interrogatory No. 1). Both AGIS, Inc. and AGIS Software have refused to provide the requested information. Lyft also sought to confirm this

1    information at the deposition of AGIS Software, however, its designated witness, Thomas Meriam,

2    was unable to confirm it.

3        151.    As a result of the foregoing, AGIS Software either individually or as an alter ego of

4    AGIS, Inc., AGIS Holdings, and/or Malcom K. Beyer, Jr. is subject to personal jurisdiction within

5    this judicial district.

6        152.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 in that a

7    substantial part of the acts giving rise to the claim occurred in this judicial district, and because

8    AGIS Software is subject to personal jurisdiction in this district.

9                                          **COUNT I**

10    **Declaratory Relief Regarding Non-Infringement of U.S. Patent No. 7,031,728**

11        153.    Lyft restates and incorporates by reference each of the allegations set forth in

12    paragraphs 1-152 above, as if fully set forth herein.

13        154.    On information and belief, AGIS Software is the owner of all right, title, and interest

14    in the '728 patent, including the right to assert all causes of action arising under that patent and the

15    right to any remedies for infringement of it.  A copy of the '728 patent is attached hereto as **Exhibit**

16    **A**.

17        155.    As a result of the acts described in the preceding paragraphs, there exists a

18    controversy of sufficient immediacy and reality regarding whether Lyft infringes the claims of the

19    '728 Patent, including Lyft facing an imminent threat of restraint on free use of its non-infringing

20    products, such that a declaratory judgment of non-infringement is warranted.

21        156.    Lyft has not infringed, directly or indirectly the claims of the '728 Patent by or

22    through making, using, offering for sale, selling within the United States and/or importing of its

23    products and/or services.

24        157.    The '728 Patent purports to concern a system for monitoring the location and status

25    of a plurality users on the display of the users' cellular phone or PDA."  Exhibit A at Abstract.

26        158.    Claim 7 of the '728 Patent provides as follows:

27

28        7. A method of establishing a cellular phone communication network for designated
        participants, each having a similarly equipped cellular phone that includes voice

---

communication, free and operator selected text messages, photograph and video, a CPU, a GPS navigation system and a touch screen display comprising the steps of:

a) generating one or more symbols on the touch display screen, each representing a different participant that has a cellular phone that includes said voice communication, free and operator selected text messages, photograph and video, a CPU, said GPS system and a touch screen display;

b) providing and storing in each of the participant cellular phones one or more cellular phone telephone numbers, each cellular phone number of which relates to a different symbol of each of the participants in the communication network;

c) providing initiating cellular phone calling software in each cellular phone that is activated by touching a symbol on the touch display that automatically initiates a cellular phone call using the stored cellular phone number to the participant represented by the symbol; and

d) generating a geographical location chart on said display screen to show the geographical location of each of the symbols representing the participants in the communication network by latitude and longitude.

159.    Lyft does not infringe claim 7 of the '728 Patent at least because the activities and/or products of Lyft accused of infringing the '728 Patent, including at least Lyft's Accused Products, do not infringe claim 7 literally or under the doctrine of equivalents.

160.    For example, without limitation, Lyft does not "provid[e] and stor[e] in each of the participant cellular phones one or more cellular phone telephone numbers, each cellular phone number of which relates to a different symbol of each of the participants in the communication network" as required by claim 7 and as alleged by AGIS Software.  Contrary to AGIS Software's allegations, Lyft does not store numbers on user devices.  Consequently, Lyft does not "provid[e] and stor[e] in each of the participant cellular phones one or more cellular phone telephone numbers" as required by claim 7 of the '728 Patent.  At least for these reasons, Lyft does not infringe claim 7 of the '728 Patent.  The allegations in this paragraph are exemplary and do not preclude Lyft from contending that claim 7 and the claims depending from it are not infringed for additional reasons.

161.    As another example, without limitation, Lyft does not "provid[e] initiating cellular phone calling software in each cellular phone that is activated by touching a symbol on the touch display that automatically initiates a cellular phone call using the stored cellular phone number to the participant represented by the symbol" as required by claim 7 and as alleged by AGIS Software. Contrary to AGIS Software's allegations, Lyft does not use symbols representing participants to

place calls.  Consequently, Lyft does not "provid[e] initiating cellular phone calling software in each cellular phone that is activated by touching a symbol on the touch display that automatically initiates a cellular phone call using the stored cellular phone number to the participant represented by the symbol" as required by claim 7 of the '728 Patent.  At least for these reasons, Lyft does not infringe claim 7 of the '728 Patent.  The allegations in this paragraph are exemplary and do not preclude Lyft from contending that claim 7 and the claims depending from it are not infringed for additional reasons.

162.    For at least the foregoing reasons, Lyft does not infringe any claim of the '728 patent, directly or indirectly, contributorily or otherwise through its or its user's activities in conjunction with the Lyft rider or Lyft driver applications, or any other Lyft product.

163.    As set forth above, an actual and justiciable controversy exists between Lyft and AGIS Software as to Lyft's non-infringement of the '728 patent.

164.    Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*, Lyft requests that this Court enter a judgment that Lyft does not infringe, under any theory of infringement, any valid claim of the '728 patent.

## COUNT II

## Declaratory Relief Regarding Non-Infringement of U.S. Patent No. 7,630,724

165.    Lyft restates and incorporates by reference each of the allegations set forth in paragraphs 1-164 above, as if fully set forth herein.

166.    AGIS Software alleges that it is the owner of all right, title, and interest in the '724 patent, including the right to assert all causes of action arising under that patent and the right to any remedies for infringement of it.  A copy of the '724 patent is attached hereto as **Exhibit B**.

167.    As a result of the acts described in the preceding paragraphs, there exists a controversy of sufficient immediacy and reality regarding whether Lyft infringes the claims of the '724 Patent, including Lyft facing an imminent threat of restraint on free use of its non-infringing products, such that a declaratory judgment of non-infringement is warranted.

168.    Lyft has not infringed, directly or indirectly the claims of the '724 Patent by or through making, using, offering for sale, selling within the United States and/or its importing of it products and/or services.

169.    The '724 Patent purports to concern monitoring other user's location and status, and to initiate cellular phone calls between users by selecting a symbol on a touch display.  Exhibit B at Abstract.

170.    Claim 16 of the '724 Patent provides as follows:

16. A method of providing a cellular phone communication network for designated participating users, each having a similarly equipped PDA cellular phone that includes a CPU, a GPS navigational system and a touch screen display comprising:

selecting an icon that establishes rapid voice call initiation and communication to the users of the cellular telephone PDA/GPS network system by touching their symbol on the phone's touch screen;

transmitting high speed internet rapid transmission of operator selected text messages, photographs, voice recordings and video to other cellular phone users using the touch screen;

accessing a server for establishing high speed internet communications between said cellular phone network users and said server; and

generating at the server networks enabling anonymous voice and data communications so that neither the originator of the phone call or data transmission nor the receiver of the phone call or data transmission need to know the other's phone number, name or other identifier other than a symbol location on a map.

171.    Lyft does not infringe claim 16 of the '724 Patent at least because the activities and/or products of Lyft accused of infringing the '724 Patent, including at least Lyft's Accused Products, do not infringe claim 16 literally or under the doctrine of equivalents.

172.    For, without limitation, Lyft does not "establish[] rapid voice call initiation and communication to the users of the cellular telephone PDA/GPS network system by touching their symbol on the phone's a touch screen" as required by claim 16 and as alleged by AGIS Software. Contrary to AGIS Software's allegations, Lyft does not use symbols representing participants to place calls.  Consequently, Lyft does not "establish[] rapid voice call initiation and communication to the users of the cellular telephone PDA/GPS network system by touching their symbol on the phone's a touch screen" as required by claim 16 of the '724 Patent.  At least for these reasons, Lyft

does not infringe claim 16 of the '724 Patent. The allegations in this paragraph are exemplary and do not preclude Lyft from contending that claim 16 and the claims depending from it are not infringed for additional reasons.

173.    As another example, without limitation, Lyft does not "generate[e] at the server networks enabling anonymous voice and data communications so that neither the originator of the phone call or data transmission nor the receiver of the phone call or data transmission need to know the other's phone number, name or other identifier other than a symbol location on a map" as required by claim 16 and as alleged by AGIS Software. Contrary to AGIS Software's allegations, Lyft does provide additional information such as a phone numbers, name, and/or other identifiers other than a symbol on a map. At least for these reasons, Lyft does not infringe claim 16 of the '724 Patent. The allegations in this paragraph are exemplary and do not preclude Lyft from contending that claim 16 and the claims depending from it are not infringed for additional reasons.

174.    For at least the foregoing reasons, Lyft does not infringe any claim of the '724 patent, directly or indirectly, contributorily or otherwise through its or its user's activities in conjunction with the Lyft rider or Lyft driver applications, or any other Lyft product.

175.    As set forth above, an actual and justiciable controversy exists between Lyft and AGIS Software as to Lyft's non-infringement of the '724 patent.

176.    Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*, Lyft requests that this Court enter a judgment that Lyft does not infringe, under any theory of infringement, any valid claim of the '724 patent.

**COUNT III**

**Declaratory Relief Regarding Non-Infringement of U.S. Patent No. 8,213,970**

177.    Lyft restates and incorporates by reference each of the allegations set forth in paragraphs 1-176 above, as if fully set forth herein.

178.    On information and belief, AGIS Software is the owner of all right, title, and interest in the '970 patent, including the right to assert all causes of action arising under that patent and the right to any remedies for infringement of it. A copy of the '970 patent is attached hereto as **Exhibit C**.

179.    As a result of the acts described in the preceding paragraphs, there exists a controversy of sufficient immediacy and reality regarding whether Lyft infringes the claims of the '970 Patent, including Lyft facing an imminent threat of restraint on free use of its non-infringing products, such that a declaratory judgment of non-infringement is warranted.

180.    Lyft has not infringed, directly or indirectly the claims of the '970 Patent by or through making, using, offering for sale, selling within the United States and/or its importing of it products and/or services.

181.    The '970 Patent purports to concern "enabl[ing] a participant to force an automatic acknowledgement and a manual response to a text or voice message from other participants within the same network." Exhibit C at Abstract.  The Patent describes a sender to select an option to send a forced message, which forced message requires a response from a recipient of the message. In response to receiving the forced message, the recipient must select a response on their device before they can exit from the message. *Id.* at Figures 3A and 4.

182.    Claim 2 of the '970 Patent provides as follows:

> 2. A communication system for transmitting, receiving, confirming receipt, and responding to an electronic message, comprising:
>
> > a predetermined network of participants, wherein each participant has a similarly equipped PDA/cell phone that includes a CPU and a touch screen display a CPU and memory;
> >
> > a data transmission means that facilitates the transmission of electronic files between said PDA/cell phones in different locations;
> >
> > a sender PDA/cell phone and at least one recipient PDA/cell phone for each electronic message;
> >
> > a forced message alert software application program including a list of required possible responses to be selected by a participant recipient of a forced message response loaded on each participating PDA/cell phone;
> >
> > means for attaching a forced message alert software packet to a voice or text message creating a forced message alert that is transmitted by said sender PDA/cell phone to the recipient PDA/cell phone, said forced message alert software packet containing a list of possible required responses and requiring the forced message alert software on said recipient PDA/cell phone to transmit an automatic acknowledgment to the sender PDA/cell phone as soon as said forced message alert is received by the recipient PDA/cell phone;
> >
> > means for requiring a required manual response from the response list by the

recipient in order to clear recipient's response list from recipient's cell phone display;

means for receiving and displaying a listing of which recipient PDA/cell phones have automatically acknowledged the forced message alert and which recipient PDA/cell phones have not automatically acknowledged the forced message alert;

means for periodically resending said forced message alert to said recipient PDA/cell phones that have not automatically acknowledged the forced message alert; and

means for receiving and displaying a listing of which recipient PDA/cell phones have transmitted a manual response to said forced message alert and details the response from each recipient PDA/cell phone that responded; and

means for displaying a geographical map with georeferenced entities on the display of the sender PDA/cell phone; means for obtaining location and status data associated with the recipient PDA/cell phone; and means for presenting a recipient symbol on the geographical map corresponding to a correct geographical location of the recipient PDA/cell phone, wherein the forced message alert software application program on the recipient PDA/cell phone includes:

means for transmitting the acknowledgment of receipt to said sender PDA/cell phone immediately upon receiving a forced message alert from the sender PDA/cell phone;

means for controlling of the recipient PDA/cell phone upon transmitting said automatic acknowledgment and causing, in cases where the force message alert is a text message, the text message and a response list to be shown on the display of the recipient PDA/cell phone or causes, in cases where the forced message alert is a voice message, the voice message being periodically repeated by the speakers of the recipient PDA/cell phone while said response list is shown on the display;

means for allowing a manual response to be manually selected from the response list or manually recorded and transmitting said manual response to the sender PDA/cell phone; and

means for clearing the text message and a response list from the display of the recipient PDA/cell phone or stopping the repeating voice message and clearing the response list from the display of the recipient PDA/cell phone once the manual response is transmitted.

183.    Lyft does not infringe claim 2 of the '970 Patent at least because the activities and/or products of Lyft accused of infringing the '970 Patent, including at least Lyft's Accused Products, do not infringe claim 1 literally or under the doctrine of equivalents.

184.    For example, without limitation, Lyft does not require a "forced message alert" nor "[require] a required manual response from the response list by the recipient in order to clear recipient's response list from recipient's cell phone display" as required by claim 2 and as alleged

by AGIS Software.  The '970 Patent defines "the response list" as "the response list from which the message receive must select." *Id.* at 7:55-56.  Contrary to AGIS Software's allegations, Lyft does not requires manual responses to clear a recipient's response list from the recipient's cell phone display.  Consequently, Lyft does not require a "forced message alert" nor "[require] a required manual response from the response list by the recipient in order to clear recipient's response list from recipient's cell phone display" as required by claim 2 of the '970 Patent.  At least for these reasons, Lyft does not infringe claim 2 of the '970 Patent.  The allegations in this paragraph are exemplary and do not preclude Lyft from contending that claim 2 and the claims depending from it are not infringed for additional reasons.

185.    For example, without limitation, Lyft does not require a "means for requiring a required manual response from the response list by the recipient in order to clear recipient's response list from recipient's cell phone display" as required by claim 2 and as alleged by AGIS Software.  The '970 Patent states that a display "can only be cleared by manually transmitting a response." *Id.* at Abstract.  Contrary to AGIS Software's allegations, Lyft does not requires manual responses to clear a display.  Consequently, Lyft does not require a "forced message alert" nor "[require] a required manual response from the response list by the recipient in order to clear recipient's response list from recipient's cell phone display" as required by claim 2 of the '970 Patent.  At least for these reasons, Lyft does not infringe claim 2 of the '970 Patent.  The allegations in this paragraph are exemplary and do not preclude Lyft from contending that claim 2 and the claims depending from it are not infringed for additional reasons.

186.    For at least the foregoing reasons, Lyft does not infringe any claim of the '970 patent, directly or indirectly, contributorily or otherwise through its or its user's activities in conjunction with the Lyft rider or Lyft driver applications, or any other Lyft product.

187.    As set forth above, an actual and justiciable controversy exists between Lyft and AGIS Software as to Lyft's non-infringement of the '970 patent.

188.    Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*, Lyft requests that this Court enter a judgment that Lyft does not infringe, under any theory of infringement, any valid claim of the '970 patent.

**COUNT IV**

**Declaratory Relief Regarding Non-Infringement of U.S. Patent No. 10,299,100**

189.    Lyft restates and incorporates by reference each of the allegations set forth in paragraphs 1-188 above, as if fully set forth herein.

190.    AGIS Software alleges that it is the owner of all right, title, and interest in the '100 patent, including the right to assert all causes of action arising under that patent and the right to any remedies for infringement of it.  A copy of the '100 patent is attached hereto as **Exhibit D**.

191.    As a result of the acts described in the preceding paragraphs, there exists a controversy of sufficient immediacy and reality regarding whether Lyft infringes the claims of the '100 Patent, including Lyft facing an imminent threat of restraint on free use of its non-infringing products, such that a declaratory judgment of non-infringement is warranted.

192.    Lyft has not infringed, directly or indirectly the claims of the '100 Patent by or through making, using, offering for sale, selling within the United States and/or its importing of it products and/or services.

193.    The '100 Patent purports to concern "set[ting] up ad hoc networks in emergency situations."  Exhibit D at Abstract.  The Patent further describes how users may join the ad hoc networks. *Id.* at Figures 2-4.

194.    Claim 1 of the '100 Patent provides as follows:

1. A method performed by a mobile device having a display and one or more processors, the method comprising:

executing operations on the one or more processors of the mobile device, the operations comprising:

associating the mobile device with an identifier, wherein the identifier corresponds to a network participant;

determining a device location corresponding to a geographical location of the mobile device;

receiving, from a server, mapping data including a map and coordinate translation data correlating coordinates of positions on the map with corresponding coordinates of geographical locations;

receiving, from a server, location data indicating vehicle locations of one or more vehicles;

marking the map with a plurality of symbols comprising: a participant symbol corresponding to the device location, one or more facility symbols corresponding to respective facility locations of one or more facilities, and one or more vehicle symbols corresponding to the respective vehicle locations of the one or more vehicles, wherein marking the map comprises:

determining, based at least in part on the vehicle locations and the coordinate translation data, positions on the map corresponding to the vehicle locations,

displaying the map on the display of the mobile device, and

placing the vehicle symbols on the map at the determined positions corresponding to the vehicle locations;

responsive to user selection of a portion of the display corresponding to a position on the map, identifying a selected facility symbol based on the selected position, comprising: initiating a search of a set of symbols including the facility symbols for a symbol located nearest to the selected position and, based on a result of the search, identifying the selected facility symbol as the symbol located nearest to the selected position;

responsive to user input, transmitting first information to a first vehicle of the one or more vehicles; and

receiving second information corresponding to the first vehicle and displaying the received second information on the display of the mobile device,

wherein the mobile device does not have access to a phone number associated with a computing device corresponding to the first vehicle, an Internet Protocol (IP) address associated with the computing device corresponding to the first vehicle, and an e-mail address associated with the computing device corresponding to the first vehicle.

195.    Lyft does not infringe claim 1 of the '100 Patent or any claim dependent thereon at least because the activities and/or products of Lyft accused of infringing the '100 Patent, including at least Lyft's Accused Products, do not infringe claim 1 literally or under the doctrine of equivalents.

196.    For example, without limitation, Lyft does not "receiv[e], from a server, mapping data including a map and coordinate translation data correlating coordinates of positions on the map with corresponding coordinates of geographical locations" as required by claim 1 and as alleged by AGIS Software.  Contrary to AGIS Software's allegations, Lyft does not have a use "coordinate translation data" to correlate "coordinates of positions on the map with corresponding coordinates of geographical locations" as required by the '100 Patent.  Consequently, Lyft does not prepare a

---

"coordinate translation data" as required by claim 1 of the '100 Patent. At least for these reasons, Lyft does not infringe claim 1 of the '100 Patent. The allegations in this paragraph are exemplary and do not preclude Lyft from contending that claim 21 and the claims depending from it are not infringed for additional reasons.

197.    As another example, without limitation, Lyft does not "initiat[e] a search of a set of symbols including the facility symbols for a symbol located nearest to the selected position" as required by claim 1 and as alleged by AGIS Software. Contrary to AGIS Software's allegations, Lyft does not have a use "search a set of symbols" as required by the '100 Patent, as Lyft searches addresses and locations and does not search through symbols themselves. Consequently, Lyft does not "search a set of symbols" as required by claim 1 of the '100 Patent. At least for these reasons, Lyft does not infringe claim 1 of the '100 Patent. The allegations in this paragraph are exemplary and do not preclude Lyft from contending that claim 1 and the claims depending from it are not infringed for additional reasons.

198.    For at least the foregoing reasons, Lyft does not infringe any claim of the '100 patent, directly or indirectly, contributorily or otherwise through its or its user's activities in conjunction with the Lyft rider or Lyft driver applications, or any other Lyft product.

199.    As set forth above, an actual and justiciable controversy exists between Lyft and AGIS Software as to Lyft's non-infringement of the '100 patent.

200.    Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*, Lyft requests that this Court enter a judgment that Lyft does not infringe, under any theory of infringement, any valid claim of the '100 patent.

## COUNT V

### Declaratory Relief Regarding Non-Infringement of U.S. Patent No. 10,341,838

201.    Lyft restates and incorporates by reference each of the allegations set forth in paragraphs 1-200 above, as if fully set forth herein.

202.    AGIS Software alleges that it is the owner of all right, title, and interest in the '838 patent, including the right to assert all causes of action arising under that patent and the right to any remedies for infringement of it. A copy of the '838 patent is attached hereto as **Exhibit E**.

203.    As a result of the acts described in the preceding paragraphs, there exists a controversy of sufficient immediacy and reality regarding whether Lyft infringes the claims of the '838 Patent, including Lyft facing an imminent threat of restraint on free use of its non-infringing products, such that a declaratory judgment of non-infringement is warranted.

204.    Lyft has not infringed, directly or indirectly the claims of the '838 Patent by or through making, using, offering for sale, selling within the United States and/or its importing of it products and/or services.

205.    The '838 Patent purports to concern "system setting up ad hoc networks."  Exhibit E at Abstract.  The Patent describes an ad hoc network for users to coordinate and communicate with one another." *Id.* at Figures 2-4.

206.    Claim 1 of the '838 Patent provides as follows:

1. A method performed by one or more servers each having one or more processors, the method comprising:

executing operations on the one or more processors, the operations comprising:

obtaining first data provided by a first mobile device corresponding to a vehicle, the first data including a first identifier;

permitting the first mobile device corresponding to the vehicle to join a communication network, the permitting based on a determination regarding the first data;

obtaining second data provided by a second mobile device corresponding to a participant, the second data including a second identifier associated with the participant;

allowing the second mobile device corresponding to the participant to join the communication network, the allowing based on a determination regarding the second data;

receiving vehicle location data provided by the first mobile device corresponding to the vehicle, wherein the vehicle location data are associated with the first identifier and indicate coordinates of a geographical location of the first mobile device;

receiving participant location data provided by the second mobile device corresponding to the participant, wherein the participant location data are associated with the second identifier and indicate coordinates of a geographical location of the second mobile device;

sending participant data to the second mobile device corresponding to the participant, wherein the participant data comprise the vehicle location data, wherein the second mobile device corresponding to the participant is configured to (1)

determine coordinates of a position on the participant map corresponding to the coordinates of the geographical location of the second mobile device, (2) display the participant map, and (3) place a first symbol on the participant map at the determined coordinates of the position on the participant map corresponding to the coordinates of the geographical location of the second mobile device;

sending vehicle data to the first mobile device corresponding to the vehicle, wherein the vehicle data comprise the participant location data, wherein the first mobile device corresponding to the vehicle is configured to (1) determine coordinates of a position on the vehicle map corresponding to the coordinates of the geographical location of the first mobile device, (2) display the vehicle map, and (3) place a second symbol on the vehicle map at the determined coordinates of the position on the vehicle map corresponding to the coordinates of the geographical location of the first mobile device;

receiving participant selection data provided by the second mobile device corresponding to the participant, the participant selection data corresponding to user input provided via a display of the second mobile device;

based on the participant selection data, performing one or more acts selected from the group consisting of: sending updated vehicle data to the first mobile device corresponding to the vehicle, sending updated participant data to the second mobile device corresponding to the participant, and sending a message to the first mobile device corresponding to the vehicle;

receiving entity-of-interest data transmitted by the second mobile device, the entity-of-interest data comprising coordinates of a geographical location of a new entity of interest, wherein the second mobile device is configured to (1) identify participant interaction with a display of the second mobile device, the participant interaction indicating selection of a position on the participant map and entry of the new entity of interest at the selected position, (2) display an entity symbol representing the new entity of interest at the selected position on the participant map, (3) determine coordinates of a geographical location of the new entity of interest based on coordinates of the selected position on the participant map, and (4) transmit the entity-of-interest data; and

sending the entity-of-interest data to the first mobile device corresponding to the vehicle, wherein the first mobile device is configured to place the entity symbol representing the new entity of interest on the vehicle map at a position on the vehicle map corresponding to the geographical location of the new entity of interest.

207.   Lyft does not infringe claim 1 of the '838 Patent or any claim dependent thereon at least because the activities and/or products of Lyft accused of infringing the '838 Patent, including at least Lyft's Accused Products, do not infringe claim 1 literally or under the doctrine of equivalents.

208.   For example, without limitation, Lyft sends additional information beyond the limited options in the Markush group "based on the participant selection data, performing one or

more acts selected from the group consisting of: sending updated vehicle data to the first mobile device corresponding to the vehicle, sending updated participant data to the second mobile device corresponding to the participant, and sending a message to the first mobile device corresponding to the vehicle" as required by claim 1 and as alleged by AGIS Software.  At least for these reasons, Lyft does not infringe claim 1 of the '838 Patent.  The allegations in this paragraph are exemplary and do not preclude Lyft from contending that claim 1 and the claims depending from it are not infringed for additional reasons.

209.    As another example, without limitation, Lyft does not "receiv[e] entity-of-interest data transmitted by the second mobile device, the entity-of-interest data comprising coordinates of a geographical location of a new entity of interest" as required by claim 1 and as alleged by AGIS Software.  Contrary to AGIS Software's allegations, Lyft does not have a use "receive new entities-of-interest data as required by the '100 Patent, as Lyft relies on existing entities-of-interest. Consequently, Lyft does not "receive entity-of-interest data … comprising coordinates of a geographical location of a new entity of interest" as required by claim 1 of the '100 Patent.  At least for these reasons, Lyft does not infringe claim 1 of the '838 Patent.  The allegations in this paragraph are exemplary and do not preclude Lyft from contending that claim 1 and the claims depending from it are not infringed for additional reasons.

210.    For at least the foregoing reasons, Lyft does not infringe any claim of the '838 patent, directly or indirectly, contributorily or otherwise through its or its user's activities in conjunction with the Lyft rider or Lyft driver applications, or any other Lyft product.

211.    As set forth above, an actual and justiciable controversy exists between Lyft and AGIS Software as to Lyft's non-infringement of the '838 patent.

212.    Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*, Lyft requests that this Court enter a judgment that Lyft does not infringe, under any theory of infringement, any valid claim of the '838 patent.

## COUNT VI

### Breach of Contract
*Overview of Apple Agreement*

213.   Lyft restates and incorporates by reference each of the allegations set forth in paragraphs 1-212 above, as if fully set forth herein.

214.   On September 18, 2017, AGIS Software Development LLC ("AGIS Software") sued Apple, Inc. ("Apple") for patent infringement in the Eastern District of Texas in consolidated lead case no. 2:17-cv-516 ("Apple Litigation").

215.   On information and belief, in March 2019, one or more of the AGIS Entities entered into a settlement and patent license agreement with Apple (hereinafter the "Apple Agreement"), which resolved the Apple Litigation.  On information and belief, this information could have been confirmed had AGIS Software complied with its obligations under Patent L.R. 3-2 to produce "all agreements, including licenses, transferring an interest in any patent-in-suit."  But AGIS Software has not produced all such agreements despite a specific request by Lyft that AGIS Software do so.

216.   On information and belief, one or more of the AGIS Entities are parties to the Apple Agreement.  On information and belief, this information could have been confirmed had AGIS Software complied with its obligations under Patent L.R. 3-2 to produce "all agreements, including licenses, transferring an interest in any patent-in-suit."  But AGIS Software has not produced all such agreements despite a specific request by Lyft that AGIS Software do so.

217.   On information and belief, Apple is a party to the Apple Agreement.  On information and belief, this information could have been confirmed had AGIS Software complied with its obligations under Patent L.R. 3-2 to produce "all agreements, including licenses, transferring an interest in any patent-in-suit."  But AGIS Software has not produced all such agreements despite a specific request by Lyft that AGIS Software do so.

218.   On information and belief, settlement agreements executed by Apple to resolve patent litigation matters may include covenants not to assert infringement based on covered Apple products.  *See, e.g., Perfect Co. v. Adaptics Ltd.*, 374 F. Supp. 3d 1039 (W.D. Wash. 2019).

219.   On information and belief, the Apple Agreement includes a covenant not to sue for infringement of the Patents-In-Suit based on the alleged infringement of an Apple product.  *See id.*.

220.   On information and belief, the Apple Agreement has not been terminated.  On information and belief, this information could have been confirmed had AGIS Software complied

with its obligations under Patent L.R. 3-2 to produce "all agreements, including licenses, transferring an interest in any patent-in-suit." But AGIS Software has not produced all such agreements despite a specific request by Lyft that AGIS Software do so.

221.   On information and belief, as of March 2019, the Apple Agreement was an enforceable contract that was binding upon AGIS Software, AGIS, Inc., AGIS Holdings, and/or Malcolm K. Beyer Jr.  On information and belief, this information could have been confirmed had AGIS Software complied with its obligations under Patent L.R. 3-2 to produce "all agreements, including licenses, transferring an interest in any patent-in-suit."  But AGIS Software has not produced all such agreements despite a specific request by Lyft that AGIS Software do so.

222.   On information and belief, the Apple Agreement remains an enforceable contract that is currently binding upon AGIS Software, AGIS, Inc., AGIS Holdings, and/or Malcolm K. Beyer Jr.  On information and belief, this information could have been confirmed had AGIS Software complied with its obligations under Patent L.R. 3-2 to produce "all agreements, including licenses, transferring an interest in any patent-in-suit."  But AGIS Software has not produced all such agreements despite a specific request by Lyft that AGIS Software do so.

223.   On information and belief, the Apple Agreement has not expired.  On information and belief, this information could have been confirmed had AGIS Software complied with its obligations under Patent L.R. 3-2 to produce "all agreements, including licenses, transferring an interest in any patent-in-suit."  But AGIS Software has not produced all such agreements despite a specific request by Lyft that AGIS Software do so.

224.   On information and belief, any and all conditions precedent necessary to enforce the terms of the Apple Agreement have been satisfied.

225.   On information and belief, Apple has fully performed any and all obligations required of it under the Apple Agreement.

*The Asserted Patents in in the Eastern District of Texas litigation*

226.   On information and belief, the Apple Agreement covers the Patents-in-Suit, which are related to patents asserted against Apple by AGIS Software.  On information and belief, this information could have been confirmed had AGIS Software complied with its obligations under

Patent L.R. 3-2 to produce "all agreements, including licenses, transferring an interest in any patent-in-suit." But AGIS Software has not produced all such agreements despite a specific request by Lyft that AGIS Software do so.

*The Apple Agreement Covers the Products Accused in the Eastern District of Texas litigation*

227.    On information and belief, the Apple Agreement covers Apple iOS products which AGIS Software accused of infringing the Patents-in-Suit or related patents.

*The Accused Products in the Eastern District of Texas litigation are Licensed Products*

228.    Lyft's application(s) may be installed on iPhones or other iOS devices.

229.    On information and belief, Lyft's application(s) installed on an iPhone or other iOS device would be licensed by the Apple Agreement. On information and belief, this information could have been confirmed had AGIS Software complied with its obligations under Patent L.R. 3-2 to produce "all agreements, including licenses, transferring an interest in any patent-in-suit." But AGIS Software has not produced all such agreements despite a specific request by Lyft that AGIS Software do so.

230.    In its infringement contentions served May 19, 2021 as part of its Eastern District of Texas litigation against Lyft alleging patent infringement, attached as Exhibit F, AGIS Software accused the Lyft application installed on all iOS mobile devices.

231.    In its infringement contentions served February 25, 2022 as part of this lawsuit, AGIS Software accused the Lyft application installed on iOS mobile devices and has not formally withdrawn its allegations against iOS devices.

232.    AGIS Software included a picture of the Lyft application running on an iPhone in its E.D. Tex. complaint and its infringement contentions in this case. *See, e.g.*, *AGIS Software Development LLC v. Lyft, Inc.*, Civil Action No. 2:21-cv-00024-JRG (E.D. Tex.), Dkt. 1 at page 14; Exhibit G at A-29.

*AGIS Software Breached the Covenant Not to Sue Provision of the Apple Agreement*

233.    On January 29, 2021, AGIS Software sued Lyft for patent infringement of the '970 Patent, '724 Patent, '728 Patent, '838 Patent, and the '100 Patent, alleging infringement based on Lyft's application(s) installed on iOS devices.

234.    On information and belief, the Apple Agreement was executed prior to January 29, 2021.  On information and belief, this information could have been confirmed had AGIS Software complied with its obligations under Patent L.R. 3-2 to produce "all agreements, including licenses, transferring an interest in any patent-in-suit."  But AGIS Software has not produced all such agreements despite a specific request by Lyft that AGIS Software do so.

235.    On information and belief, AGIS Software breached the covenant not to sue provision of the Apple Agreement by suing Lyft in the Eastern District of Texas litigation for infringement of five AGIS Software Patents (i.e., the licensed '970, '724, '728, '838, and '100 Patents) based on Lyft's application(s) installed on iOS devices.  On information and belief, this information could have been confirmed had AGIS Software complied with its obligations under Patent L.R. 3-2 to produce "all agreements, including licenses, transferring an interest in any patent-in-suit."  But AGIS Software has not produced all such agreements despite a specific request by Lyft that AGIS Software do so.

*AGIS is Causing Injury by Wrongfully Asserting the '970, '724, '728, '838, and '100 Patents*

*Against Lyft*

236.    On information and belief, AGIS Software was aware before filing the Eastern District of Texas suit and before serving infringement contentions in this case that its allegations rely on functionality and features provided by Apple iPhones and iOS devices.

237.    AGIS Software, AGIS, Inc., AGIS Holdings, and/or Malcolm K. Beyer Jr.'s breach of the covenant not to sue has caused Lyft to incur damages, including but not limited to attorneys' fees and other expenses in this and the E.D. Tex. case.

## PRAYER FOR RELIEF

WHEREFORE, Lyft respectfully prays for judgment in favor of Lyft and against AGIS Software, as follows:

1.    For a judicial determination and declaration that Lyft has not infringed and is not infringing, directly or indirectly, any claim of the Patents-in-Suit;

2.    For injunctive relief against AGIS Software, and all persons acting on its behalf or in concert with it, restraining them from further prosecuting or instituting any action against Lyft or

Lyft's users claiming the Patents-in-Suit are infringed, or for representing that Lyft's products or services, or that others' use thereof, infringe the Patents-in-Suit;

3.    For a declaration that this case is exceptional under 35 U.S.C. § 285 and for an award of attorneys' fees and costs in this action; and

4.    For such other and further relief as this Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Lyft respectfully demands a jury trial in this action on all issues so triable.

Dated:  May 25, 2022                    By:   */s/ Jeremy Taylor*
                                              Jeremy Taylor

                                              Jeremy J. Taylor (SBN 249075)
                                              Arya Moshiri (SBN 324231)
                                              **Baker Botts L.L.P.**
                                              jeremy.taylor@bakerbotts.com
                                              arya.moshiri@bakerbotts.com
                                              101 California St., Suite 3600
                                              San Francisco, CA 94111
                                              Telephone: (415) 291-6200
                                              Facsimile: (415) 291-6300

                                              Bethany R. Salpietra (*pro hac vice*)
                                              **Baker Botts L.L.P.**
                                              bethany.salpietra@bakerbotts.com
                                              2001 Ross Ave., Ste. 900
                                              Dallas, TX 75201
                                              Telephone: (214) 953-6500
                                              Facsimile: (214) 953-6503

                                              *Attorneys for Plaintiff Lyft, Inc.*